JORDAN RICH
8700 East Jefferson Ave
Unit 371963
Denver, CO, 80237
beinglockedoutsucks@gmail.com

*Plaintiff Pro Se*

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
11:29 am, May 28, 2024
JEFFREY P. COLWELL, CLERK

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| JORDAN RICH,<br><br>    Plaintiff,<br><br>vs.<br><br>JOHN FEYAN, in his official capacity as LARIMER COUNTY SHERIFF; JESSICA L. KERN, JOHN P. MARTENS, EMMAUNUEL M. NTI, JEFFREY A. BONTRAGER, STEVE REAMS, in his official capacity as WELD COUNTY SHERIFF, WELD COUNTY, a political subdivision of the STATE OF COLORADO, LARIMER COUNTY, a political subdivision of the STATE OF COLORADO, POUDRE VALLEY HOSPITAL, WEST PINES BEHAVIORAL HEALTH, and STATE OF COLORADO, a sovereign state of the United States of America, And DOES 1-11<br><br>    Defendants, | **COMPLAINT**<br><br>**Case No.**<br><br>Judge<br><br>Magistrate Judge |

In May of 2023, Plaintiff, while engaged in the free exercise of his religion, traveling with his service animal in a recreational vehicle, was kidnapped and falsely imprisoned, entirely on the basis of Plaintiff's religious exercise. Plaintiff was slandered as mentally incompetent, a psychotic, because of his religion. Plaintiff was unlawfully threatened and his liberty trampled upon without ANY legitimate process of law. Plaintiff brings this action to demand justice against these criminals and the corrupt state of Colorado.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 (federal question); 28 U.S.C. §1367 (supplemental jurisdiction); 28 U.S.C. §2201 (declaratory judgment); and 28 U.S.C. §1361 (mandamus).

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(e) because the underlying events that spurred this action occurred in the state of Colorado.

## PARTIES

3. Plaintiff Jordan Rich, at all times relevant hereto, was a resident of Denver County in the State of Colorado. Plaintiff is a free man, is not a slave, and is not the property of the state of Colorado or the United States.

4. Defendant John Feyen, at all times relevant hereto, was the elected Sheriff of Larimer County in the State of Colorado. Mr. Feyen began his term on January 10, 2023.

5. Defendant Jessica L. Kern, at all times relevant hereto, was a Licensed Clinical Social Worker working at Poudre Valley Hospital. Ms. Kern was licensed as a clinical social worker by the State of Colorado on February 10, 2023 with license number CSW.09929030.

6. Defendant John P. Martens, at all times relevant hereto, was working as a physician at West Pines Behavioral Health. Defendant Martens was licensed as a physician by the State of Colorado on September 14, 1995 with license number DR.0034811.

7. Defendant Emmanuel M. Nti, at all times relevant hereto, was a nurse at West Pines Behavioral Health. Defendant Nti was licensed as a nurse practitioner by the State of Colorado on December 13, 2013 with license number RN.1625005.

8. Defendant Jeffrey A. Bontrager, at all times relevant hereto, was a physician at Midtown Inpatient Medicine, LLC. Defendant Bontrager was licensed as a physician by the State of Colorado on June 24, 2011 with license number DR.0050240.

9. Defendant Steve Reams, at all times relevant hereto, was the elected Sheriff of Weld County. Defendant Reams began his term on December 3rd, 2015.

10. Defendant Weld County is a political subdivision of the State of Colorado.

11. Defendant Larimer County is a political subdivision of the State of Colorado.

12. Defendant Poudre Valley Hospital is a medical facility that, among other things, practices emergency medicine. Poudre Valley Hospital is located in Fort Collins, Colorado in Larimer County.

13. Defendant State of Colorado is a sovereignty established under the Constitution and Laws of the United States.

14. Defendants DOES 1-11 are fictitious names of those who have not yet been identified by name. When the identities of these individuals are ascertained, this complaint shall be amended by leave of the court or by agreement of the parties to correctly identify the parties at interest.

## BACKGROUND

15. Plaintiff is a highly intelligent, very educated, and law abiding individual who has a mild form of autism, most often referred to as Aspergers Syndrome.

16. Plaintiff has regularly seen medical professionals for treatment of the symptoms of the disorder since he was an adolescent.

17. Plaintiff has been self-sufficient since about the time he was 19 years old and at all times relevant hereto 39 years old.

18. Plaintiff has a service animal that he acquired in July of 2022 to assist him with certain symptoms of autism, namely sleep related issues and managing other aspects of the disorder.

19. On November 26, 2022, Plaintiff went on a road trip across the contiguous United States with his service animal, returning to Denver, Colorado in mid February 2023.

20. On May 16, 2023, Plaintiff embarked on another trip, to visit Wyoming and Montana and camp on public lands.

21. Plaintiff lives a religiously nomadic lifestyle, "wild at heart," and travels in a van that he converted into a camper that contains everything a person would need to live while on the road. The van contains a solar/electrical system, microwave, freezer, heater, air conditioner, water system, sink, lights, and bed. At the time, the van was stocked with ample food to feed Plaintiff and his service animal.

22. As a first stop, Plaintiff visited Pawnee National Grasslands, located within Weld County in the State of Colorado.

23. Plaintiff parked his camper van within the boundaries of Pawnee National Grasslands and on a spot that was clearly identified by the National Forest Service on a Motor Vehicle Use Map as appropriate for dispersed camping.

24. On May 18, 2023, while Plaintiff was camping with his service animal at Pawnee National Grasslands, at approximately 7:30am while Plaintiff was sleeping in his camper van, Defendant DOE 1, a Deputy Sheriff working for Weld County Sheriff's Office, awoke Plaintiff by loudly banging on his van's window.

25. Defendant DOE 1 identified himself as a Sheriff's Deputy for Weld County and then began inquiring about why Plaintiff was there. He identified that the Sheriff's Office received a call that someone was camping in a van at Pawnee National Grasslands.

26. Defendant DOE 1 stated to Plaintiff that it was the policy and procedure of Weld County to investigate any vehicle and person camping at Pawnee National Grasslands. Defendant DOE 1 also stated to Plaintiff that the act of camping in a van with the windows covered on public lands was reasonable suspicion to investigate.

27. Plaintiff proceeded to inform Defendant DOE 1 that he was lawfully camping on public lands, then showed Defendant DOE 1 the Motor Vehicle Use Map (MVUM) promulgated by the National Forest Service, which clearly identified that Plaintiff had been camping in an approved dispersed camping area.

28. Defendant DOE 1 demanded that Plaintiff provide them with his Driver's License so that they could unlawfully investigate Plaintiff further.

29. Plaintiff complied with the request, though he did indicate to the deputy that they were in the act of violating Plaintiff"s rights and that they did not possess the requisite reasonable suspicion required for a stop of this nature.

30. After some time, once Defendant DOE 1 clearly had not been able to find any derogatory information about Plaintiff to justify their further harassment, they left.

31. Plaintiff was planning on camping at Pawnee National Grasslands for 5 days total, but after the encounter with Defendant DOE 1 and their lawlessness, Plaintiff did not feel safe camping there

anymore and decided to spend time exploring the natural preserves and state parks near Fort Collins, Colorado.

32. On May 20, 2023 at ~7:00pm, Plaintiff was driving down Northbound I-25, when his service animal indicated that they needed to go potty. Plaintiff exited the freeway at exit 269A, intending to go to the Riverbend Ponds natural area, but took a wrong turn and because the dog needed to go, Plaintiff parked his van in a residential neighborhood, on the side of the road. The area Plaintiff parked the van was clearly the side of a public roadway, there did not exist any signage identifying no parking on the side of the road and the van was parked in such a way that it was not a nuisance.

33. Plaintiff then walked his dog and on his way back to the van the sun went down and it got dark.

34. Plaintiff tied his service animal up near Timnath Middle-High School, near the neighborhood where the van was parked, and went in search to find it.

35. At about 11pm, Plaintiff encountered Defendant DOE 2 and Defendant DOE 3, Larimer County Sheriff's Deputies, each arriving in their own vehicle, who stated that somebody had called them about a suspicious person.

36. Plaintiff was distraught at this time because he was worried about finding the van so that he could give his service animal water.

37. Defendant DOE 2 told Plaintiff that they had found his van, that it had been illegally parked, and implied that they had impounded his van. They ask Plaintiff who he could call to pick him up.

38. Defendants DOES 1 and 2 knew that Plaintiff's van had been converted into a camper van and possessed a solar/electrical system, microwave, freezer, heater, air conditioner, water system, sink, lights, and bed and knew that the van was properly registered in the state of Colorado and was properly insured to be driven on public roadways.

39. Plaintiff did not identify anybody to call, but said that he needed a "church".

40. Plaintiff agreed to go with Defendant DOE 2 to the hospital because Plaintiff did not have any other option as Defendant DOE 2 and Defendant DOE 3 indicated that they had seized all of his property.

41. Though Plaintiff told the officers that his service animal was tied up at the school and later pointed at the service animal, they took Plaintiff to Poudre Valley Hospital and they left his service animal at the school.

42. When Plaintiff arrived at Poudre Valley Hospital, he was distraught because he believed based upon the statements of Defendant DOE 2, that his van, and his current home, had been stolen.

43. At the hospital, a nurse took biometric readings, and they brought him to a room. Plaintiff slept and did not speak to anybody or receive any sort of mental health evaluation while at Poudre Valley Hospital.

44. On May 21, 2023, Plaintiff was awakened in the morning, and placed into the back seat of a police vehicle, against his will, and taken to West Pines Behavioral Health.

45. Plaintiff did not know where he was being taken and did not know that he was being held on a 72 hour mental health hold, until he spoke to a nurse at West Pines Behavioral Health.

46. Plaintiff specifically declined treatment and rejected the legitimacy of the hold, stating directly to every staff member of West Pines Behavioral Health he encountered that he was being held illegally, that he refused treatment, and that he demanded to speak to an attorney and a judge.

47. It was at this time that Plaintiff was threatened by Defendant DOE 4, a nurse at West Pines Behavioral Health, and Defendant Martens that they planned on restraining Plaintiff and administering a sedative to stop Plaintiff from exercising his constitutional right to free speech and to be free from false imprisonment.

48. Defendant Martens', Bontrager's, and Nti's basis for imprisoning Plaintiff was that they believed Plaintiff was too religious and therefore psychotic and gravely disabled.

49. At no time was Plaintiff out of control or a threat to anybody or himself.

50. Plaintiff is not nor has he ever been gravely disabled.

51. Despite that Plaintiff did not receive any legitimate mental health evaluation to justify an involuntary mental health hold, nor did there exist any legitimate basis for such a hold, and Plaintiff from the beginning refused treatment, and though Plaintiff was not in a manic state and was in his normal state of mind, and simply is an autistic individual, Defendants Martens, Nti, and Bontrager issued a baseless diagnosis claiming that Plaintiff had Bipolar Disorder and was psychotic, and cancelled Plaintiff's longstanding prescription which was determined by the doctors of Plaintiff's choosing to be the appropriate medication for treatment.

52. While Plaintiff was being held against his will at West Pines Behavioral Health, Plaintiff experienced threats from Defendant Martens that they planned to restrain him and force him to take medications that Plaintiff knew to not be an appropriate treatment for him.

53. Plaintiff was also threatened by Defendant Martens that they intended to certify Plaintiff as insane so that they could forcibly administer medication that was not appropriate for Plaintiff's mental health.

54. Defendant Martens filed an action with the Jefferson County District Court attempting to certify Plaintiff as insane, though he lacked any legitimate medical or scientific basis for such a claim.

55. Plaintiff was then released from West Pined Behavioral Health on May 25, 2023 and was transported to the Larimer County Sheriffs office in Fort Collins, Colorado.

56. At that time, Plaintiff was told by a Larimer County Deputy at their information desk that the van was towed and impounded by Scott's Towing on May 24, 2023 but could not provided any information on the whereabouts of his service animal.

57. According to the deputy, when reviewing Larimer County Sheriff's Office records pertaining to the incident, the county had 5 patrol cars searching the area for Plaintiff on the evening of May 20, 2023, though Plaintiff did nothing illegal except traverse public streets.

58. When Plaintiff left the Larimer County Sheriff's Office to walk to the tow yard, two women approached Plaintiff while walking and indicated that they had overheard his discussion with the Sheriff's Deputy and wanted to help. They followed Plaintiff to Scott's Towing, paid the bill, and informed him that his service animal was located at the Larimer County Humane Society. They also gave Plaintiff $10 for fuel to drive to the Humane Society.

59. Upon information and belief, the women were acting either at the behest of or in the employ of Larimer County.

60. When Plaintiff gained access to his van, he found that all of his cash, in the amount of $286 had been stolen. A tool bag containing a ball joint press with attachments, multiple size chisels, taps, dies, and air tool attachments and a set of vanadium steel metric large sockets in a steel box had also been stolen.

61. When approached about the stolen money, a staff member at Scott's Towing stated that the Sheriff's office was rifling through Plaintiff's van when they arrived to tow the vehicle.

62. Plaintiff paid $1.00 to Larimer County Humane Society to get his service animal back. Though the bill was ~$150, they waived a majority of the fee.
63. Plaintiff's service animal has been trained using positive reinforcement methods and prior to the incident, had a high sense of self esteem and joy.
64. After Plaintiff picked up his service animal from Larimer County Humane Society, Plaintiff's service animal exhibited low self-esteem, his sense of joy was diminished, and it took Plaintiff months to retrain the animal to perform the tasks that he has been trained to perform as a service animal.
65. Plaintiff was not able to continue his trip because his money had been stolen.
66. Plaintiff has never exhibited 'debilitating symptoms of mania/psychosis' and is more able than a majority of people to safely function on his own without interference from others.

<u>**COUNT I**</u>
<u>**VIOLATION OF CRS §18-3-303**</u>
<u>**FALSE IMPRISONMENT**</u>

67. The averments, above, are hereby restated as if fully rewritten herein.
68. Defendants Kern, Martens, Bontrager, Nti, Poudre Valley Hospital, and West Pines Behavioral Health knowingly confined or detained Plaintiff without Plaintiff's consent and without proper legal authority.
69. Defendants Kern, Martens, Bontrager, Nti, Poudre Valley Hospital and West Pines Behavioral Health used force or the threat of force to confine or detain Plaintiff.
70. Defendants Kern, Martens, Bontrager, Nti, Poudre Valley Hospital and West Pines Behavioral Health confined or detained Plaintiff for greater than 12 hours.
71. As a proximate result of the actions of Defendants Kern, Martens, Bontrager, Nti, Powder Valley Hospital and West Pines Behavioral Health, Plaintiff suffered damages.

<u>**COUNT II**</u>
<u>**VIOLATION OF CRS §18-3-302**</u>
<u>**KIDNAPPING**</u>

72. The averments, above, are hereby restated as if fully rewritten herein.
73. Defendant Kern knowingly seized or carried away Plaintiff from one place to another, without Plaintiff's consent and without legal justification.
74. As a result, Plaintiff suffered damages.

**COUNT III**
**VIOLATION OF CRS §27-65-105**
**UNLAWFUL IMPRISONMENT**

75. The averments, above, are hereby restated as if fully rewritten herein.

76. Defendants Martens, Bontrager, Nti, and West Pines Behavioral Health detained Plaintiff for greater than 72 hours, not including weekends or holidays.

77. As a result, Plaintiff suffered damages.

**COUNT IV**
**VIOLATION OF 42 USC §1983**
**DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW**

78. The averments, above, are hereby restated as if fully rewritten herein.

79. Defendants DOE 1 and Weld County, acting under the color of Colorado state law, deprived Plaintiff of his right to be free from unlawful searches and seizures pursuant to the fourth amendment of the United States Constitution.

80. Defendant DOE 1 abused their position of trust as a peace officer in the state of Colorado, and unlawfully detained and investigated Plaintiff without any reasonable suspicion that Plaintiff had done anything illegal or improper by camping on public lands in an appropriately designated area.

81. Upon information and belief, Defendants DOE 1, Weld County, and Larimer County used the unlawful stop as a means of profiling, and to gather information about Plaintiff for the purpose of later unlawfully depriving Plaintiff of his liberty and property without due process of law.

82. As a proximate result of the actions of Defendants DOE 1 and Weld County, Plaintiff suffered damages.

**COUNT V**
**NEGLIGENCE**

83. The averments, above, are hereby restated as if fully rewritten herein.

84. Defendant Kern, acting under the color of Colorado state law, deprived Plaintiff of his right to be free from unlawful searches and seizures under to the fourth amendment of the United States Constitution.

85. Defendant Kern never met Plaintiff and never evaluated Plainitff's mental health, prior to completing an Emergency Mental Illness Report and Application, otherwise known as an M-1 form, and depriving Plaintiff of his liberty under the color of Colorado State Law.

86. Defendant Kern did not observe due process of law or did not observe their duties under the law, and deprived Plaintiff of his freedom without knowing anything about Plaintiff or his condition.

87. Defendant Kern abused her position of trust as a licensed medical practitioner.

88. As a proximate result of the actions of Defendant Kern, Plaintiff Rich suffered damages.

**COUNT VI
VIOLATION OF CRS §24-31-1203
FALSE INSURANCE CLAIMS**

89. The averments, above, are hereby restated as if fully rewritten herein.

90. Defendants Martens, Bontrager, Nti, and West Pines Behavioral Health, knowingly presented or caused to be presented a false or fraudulent claim to Colorado First Health for payment or approval.

91. Defendants Martens, Bontrager, Nti, and West Pines Behavioral Health knowingly made, used, or cased to be made or used a false record or statement material to a false or fraudulent claim.

92. As a result, Plaintiff suffered damages.

**COUNT VII
VIOLATION OF 18 USC §241
CONSPIRACY AGAINST THE CONSTITUTIONAL RIGHTS OF ANOTHER (personal capacity)**

93. The averments, above, are hereby restated as if fully rewritten herein.

94. Defendants DOES 2, 3, 5, 6, 7, Kern, Martens, Bontrager, Nti, Poudre Valley Hospital, West Pines Behavioral Health and Larimer County conspired to injure, oppress, threaten, or intimidate Plaintiff in the free exercise or enjoyment of his right to religious freedom guaranteed by 42 USC §2000cc *et seq. a*nd the First Amendment of the United States Constitution.

95. Defendant DOE 2, in furtherance of the conspiracy among the conspirers, lied to Plaintiff about the legal status of his van, so as to induce Plaintiff into being transported to the Poudre Valley Hospital wherein, Defendant Kern, someone who Plaintiff never spoke to or met, acted upon the conspiracy by falsely completing an M-1 mental health hold document and having Plaintiff committed to an insane asylum on the grounds of being *too religious*, so that Larimer County could fabricate legal justification for depriving Plaintiff of his liberty and property without due process of law.

96. Defendants Martens. Bontrager, Nti, Poudre Valley Hospital, and West Pines Behavioral Health, in furtherance of the conspiracy, fabricated documents not based on legitimate observation or fact in

medical records and legal documents, including court documents for mental health certification proceedings.

97. As a result of the conspiracy to deprive Plaintiff of his constitutional rights, his liberty, and his property, without due process of law, Plaintiff suffered damages.

## COUNT VIII
## VIOLATION OF CRS §18-9-202
## ANIMAL CRUELTY

98. The averments, above, are hereby restated as if fully rewritten herein.

99. Defendants DOES 2 and 3, having charge or custody of Plaintiff's service animal, failed to provide the animal with proper food, drink, or protection from the weather consistent with the animals status as a service animal that has never spent time alone or outside by himself, and Defendants DOES 2 and 3 abandoned the service animal.

100. Defendants DOES 2 and 3 intentionally abandoned Plaintiff's service animal.

101. As a result, Plaintiff suffered damages.

## COUNT IX
## MEDICAL MALPRACTICE

102. The averments, above, are hereby restated as if fully rewritten herein.

103. Defendant Kern holds a duty of care to meet and evaluate a patient prior to making medical claims about a patient's mental health or having a patient committed on an involuntary mental health hold without first speaking to and evaluating the patient.

104. Defendants Martens, Nti, and Bontrager hold a duty of care as psychiatric practitioners to not issue diagnoses without conducting appropriate evaluations and reviewing a patient's history.

105. Defendant Martens holds a duty of care to not issue or change prescriptions except through an appropriate review of a patient's history and conducting appropriate evaluations for such conditions or symptoms which the prescriptions aim to treat.

106. Defendants Kern, Martens, Nti, and Bontrager breached their duty of care.

107. As a proximate cause of the breach of duty by Defendants, Plaintiff suffered damages.

## COUNT X
## VIOLATION OF 42 USC §1983
## DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW (personal capacity)

108. The averments, above, are hereby restated as if fully rewritten herein.

109. Defendants DOES 2, 3, 8, 9, 10, acting under the color of Colorado state law, deprived Plaintiff of his right to be free from unlawful searches and seizures pursuant to fourth amendment of the United States Constitution.

110. Defendants DOES 2 and 3 seized Plaintiff's van without due process of law.

111. Defendants DOES 8, 9, and 10 seized cash and property belonging to Plaintiff, without due process of law or any court involvement prior to the deprivation of Plaintiff's property.

112. As a proximate result of the actions of Defendants DOES 2, 3, 8, 9, 10, Plaintiff suffered damages.

## COUNT XI
## AGENCY LIABILITY

113. The averments, above, are hereby restated as if fully rewritten herein.

114. Defendant Reams and Weld County hold a duty of care to ensure that their policies and practices conform to national standards pertaining to law enforcement and Mr. Reams has sworn an oath to uphold the constitution of the United States.

115. Defendant Reams and Weld County breached their duty of care by failing to train their officers appropriately in what constitutes reasonable suspicion to stop and investigate a person, or alternatively, Defendant Reams and Weld County encourage such unlawful behavior from their deputies.

116. According to Defendant DOE 1, Defendants Reams and Weld County have adopted a policy or it is the custom, pattern, or practice of deputies in the county to investigate and profile individuals enjoying their rights to camp on public land, without any reasonable suspicion for detaining and investigating them.

117. As a proximate result of Defendants Reams' and Weld County's breach of duty, Plaintiff suffered damages.

## COUNT XII
## AGENCY LIABILITY

118. The averments, above, are hereby restated as if fully rewritten herein.

119. Defendants Feyan and Larimer County hold a duty of care to ensure that their policies and practices conform to national standards pertaining to law enforcement and Defendant Feyan has sworn an oath to uphold the constitution of the United States.

120. Upon information and belief, Defendants Feyan and Larimer County employ a custom, policy, or practice of failing to adequately investigate the character of deputies they hire; or failing to review the character of the deputies they employ; or it is the intention of Defendant Feyen and Larimer County to employ deputies that regularly engage in dishonesty or dishonest acts.

121. Upon information and belief, Defendant Feyan and Larimer County do not adequately supervise their deputies or their deputies enjoy free reign to do as they please regardless of the legality of their actions.

122. As a proximate result of Defendants Feyan's and Larimer County's breach of duty,. Plaintiff suffered damages.

## COUNT XIII
## NEGLIGENCE

123. The averments, above, are hereby restated as if fully rewritten herein.

124. Defendants DOE 11 and Poudre Valley Hospital hold a duty of care to train and supervise mental health practitioners in their employ as it pertains to their duties and obligations in respect to the deprivation of a patient's liberty under the color of Colorado State Law.

125. Upon information and belief, Defendant Kern has received insufficient training in the legal obligations and duties involving involuntary mental health holds under the color of Colorado State Law.

126. Upon information and belief, Defendants DOE 11 and Poudre Valley Hospital do not keep or track training records of those in their employ pertaining to the legal obligations and duties involving involuntary mental health holds under the color of Colorado State Law.

127. Upon information and belief, Defendants DOE 11 and Poudre Valley Hospital have no established policies in place for the supervision of mental health practitioners for preventing those practitioners from arbitrarily abusing the rights of patients when employing involuntary mental health holds.

128. Upon information and belief, Defendants DOE 11 and Poudre Valley Hospital employ a practice, custom, or policy of not reviewing or supervising the work of mental health practitioners they employ, or have no methods or procedures in place for reviewing the deprivation of a patients liberty prior to the deprivation, nor have they established any definitions or guidelines for determining what constitutes 'Gravely Disabled', for the purposes of depriving an individual of their liberty under the color of Colorado State Law.

129. As a proximate result of Defendants DOE 11 and Poudre Valley Hospital's breach of duty, Plaintiff suffered damages.

## COUNT XIV
## PUNITIVE DAMAGES

130. The averments, above, are hereby restated as if fully rewritten herein.

131. The actions of Defendants Kern, Martens, and DOES 1, 2, 3, 5, 6, and 7 were wanton, reckless, and willful.

132. Defendants abused their positions of public trust, engaged in acts that were intentional and reckless, and took no care to consider the rights of claimant or their obligations and duties under the law.

## COUNT XV
## VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSITUTION.
## VIOLATION OF PLAINTIFF'S RIGHT TO RELIGIOUS FREEDOM

133. The averments, above, are hereby restated as if fully rewritten herein.

134. Defendant state of Colorado, violated Plaintiff's right to religious freedom under the United States Constitution and federal law by enacting CRS §27-65-105 without any safeguards to protect an individuals freedom of religion.

135. Defendant State of Colorado does not have the right to issue laws that permit individuals to kidnap, imprison, and slander another because of their engagement in peaceful religious exercise.

## DEMAND

136. The averments, above, are hereby restated as if fully rewritten herein.

137. Claimant hereby demands judgement against the above-named Respondents as follows:

   1. For Count I, that the Court award Plaintiff damages against Defendants Kern, Martens, Bontrager, Nti, Poudre Valley Hospital, and West Pines Behavioral Health in the amount of $500,000.

2. For Count II, that the Court award Plaintiffr damages against Defendant Kern in the amount of $500,000.

3. For Count III, that the Court award Plaintiff damages against Defendants Martens, Bontrager, Nti, and West Pines Behavioral Health in the amount of $200,000.

4. For Count IV, that the Court award Plaintiff damages against Defendant DOE 1 in the amount of $25,000.

5. For Count V, that the Court award Plaintiff damages against Defendant Kern in the amount of $150,000.

6. For Count VI, that the Court award Plaintiff nominal damages against Defendants Martens, Bontrager, Nti, and West Pines Behavioral Health.

7. For County VII, that the Court award Plaintiff damages against Defendants DOES 2, 3, 5, 6, 7, Kern, Martens, Bontrager, Nti, Poudre Valley Hospital, and West Pines Behavioral Health in the amount of $500,000.

8. For Count VIII, that the Court award Plaintiff damages against Defendants DOES 2 and 3 in the amount of $50,000.

9. For Count IX, that the Court award Plaintiff damages against Defendants Kern, Martens, Nti, and Bontrager in the amount of $500,000.

10. For Count X, that the Court award Plaintiff damages against Defendants DOES 2, 3 in the amount of $100,000 and Defendants 8, 9, 10 in the amount of $10,000.

11. For Count XI, that the Court hold Defendants Reams and Weld County jointly and severally liable for all damage awards for the unlawful acts of their agents and officers.

12. For Count XII, that the Court hold Defendants Feyan and Larimer County jointly and severally liable for all damage awards for the unlawful acts of their agents and officers.

13. For Count XIII, that the Court award Plaintiff damages against Defendants DOE 11 and Poudre Valley Hospital in the amount of $100,000.

14. For Count XIV, that the Court award Plaintiff punitive damages against Defendants Kern, Martens, and DOES 1, 2, 3, 5, 6, and 7 in the amount of $5,000,000.

15. For Count XV, that the Court issue and injunction against the state of Colorado striking down and declaring invalid CRS §27-65-105 for reliance upon in detaining or imprisoning an individual under a mental health hold while engaged in peaceful religious exercise.
16. That the court award Plaintiff costs and attorney fees.
17. That the court award Plaintiff pre- and post- judgment interest if so established by contract or by statute.
18. That the court award Plaintiff whatsoever the Court deem just and proper.

DATED THIS 27th day of May, 2024.

/S/ Jordan Rich
Plaintiff Pro Se